IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTINE DAVENPORT,          :

    Plaintiff,          :

v.          :
                     Civil Case No. GLR-12-1335

ANNE ARUNDEL COUNTY          :
BOARD OF EDUCATION,
                 :

    Defendant.          :

                 :


**<u>MEMORANDUM OPINION</u>**

THIS MATTER is before the Court on Defendant Anne Arundel County Board of Education's[1] (the "Board") Motion to Dismiss Plaintiff Christine Davenport's Complaint pursuant to Rule 12(b)(6)of the Federal Rules of Civil Procedure. (ECF No. 3). Ms. Davenport principally seeks relief for alleged violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 <u>et seq.</u> (2012). Specifically, Ms. Davenport alleges that the Board intentionally discriminated against her because of her age by repeatedly failing to offer her a position for which she was qualified in favor of substantially younger and less-qualified applicants. Moreover, Ms. Davenport alleges that, in retaliation for her legal action against the Board, she was

---

[1] The Board notes that its proper name is Board of Education of Anne Arundel County.

demoted to a teaching position and thereafter subjected to increased observation at work.

The issues before the Court are whether (1) a plaintiff has pled a plausible claim for relief when she alleges acts that occurred more than 300 days prior to when she filed an ADEA discrimination charge with the Equal Employment Opportunity Commission ("EEOC"); (2) a plaintiff can allege retaliation under the ADEA if she does not first allege it in her EEOC discrimination charge; (3) the Employee Retirement Income Security Act ("ERISA") applies to employment contracts between a county board of education and its employees; (4) a county board of education can raise a defense of sovereign immunity under the Eleventh Amendment in contract actions in federal court; (5) Ms. Davenport alleged intentional misrepresentation with the required specificity; and (6) Ms. Davenport pled a plausible claim for relief for negligent misrepresentation.

The issues have been fully briefed and the Motion is ripe for disposition. No hearing is necessary pursuant to Local Rule 105.6 (D.Md. 2011). For the reasons that follow, the Board's Motion to Dismiss is granted in part and denied in part.

## I.    BACKGROUND[2]

Ms. Davenport is a sixty-two-year-old, thirty-nine-year employee of Anne Arundel County Public Schools ("AACPS"). After thirty-five years of employment, Ms. Davenport sought a promotion to an assistant principal position. The Board requires assistant principal applicants to either have a Master's Degree in Administration or receive an Administrative Certificate from the AACPS-sponsored Administrative Cohort Program. (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 9, ECF No. 8). In accordance with these requirements, Ms. Davenport enrolled in the Administrative Cohort Program to receive an Administrative Certificate.

In 2005, Ms. Davenport completed the Cohort Program, received her Administrative Certificate, and became eligible for an assistant principal position with AACPS. She also accepted a position as an administrative trainee, which typically served as an internship and mentoring position for assistant principal candidates. Ms. Davenport remained in the assistant principal applicant pool for five years, during which time she consistently garnered positive evaluations.

Under an employment contract that Ms. Davenport signed in 1972, AACPS job vacancies must be announced to candidates and

---

[2] Unless otherwise noted, the following facts are taken from the Complaint and accepted as true for the purposes of this Motion.

can only be filled by applicants who have been interviewed. These procedures can only be bypassed under emergency circumstances, where vacancies are "created by late resignations, illness, or death." (Compl. ¶ 18, ECF No. 1). During Ms. Davenport's time in the applicant pool, however, AACPS allegedly hired younger applicants who did not complete similar certification or internship programs, and were not evaluated.

Moreover, Ms. Davenport alleges that prior to one of her interviews in 2008, another applicant revealed that he was given a list of questions in advance to prepare for his interview (the "cheat sheet"). The applicant, who was under forty years old, explained that the interviewers asked him the same questions as those contained in the cheat sheet.[3]   Ms. Davenport confronted AACPS officials about the questions in her interview and, in 2008, discussed the disparate treatment with Arlen Liverman, the Board's Deputy Superintendent of Schools. Mr. Liverman informed Ms. Davenport that she would not become an assistant principal "because of her seniority." (Id. ¶¶ 23-24). After she raised the age discrimination and disparate treatment issues with Mr. Liverman, AACPS reassigned Ms. Davenport from her administrative

---

[3] To Ms. Davenport's knowledge, all candidates who received a cheat sheet are under the age of forty. Other than the one given to her by the other applicant, Ms. Davenport has never received a cheat sheet.

position to a position as a classroom teacher at Marley Middle School.

On October 8, 2010, Ms. Davenport filed a claim with the Maryland Commission on Human Relations ("MCHR") and the EEOC, alleging violations of the ADEA and the Fair Employment Practices Act.   Subsequent to that filing, Kevin Buckley and Susan Sargeant, the principal and assistant principal of Marley Middle School respectively, were allegedly told to increase their observation and evaluation of Ms. Davenport's classroom performance as part of a "plan of action" that required her to improve in certain areas or face sanctions.  (Compl. ¶ 29).

Ms. Davenport's Complaint, filed on May 1, 2012, alleges age discrimination and retaliation in violation of the ADEA, violation of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 (2012), breach of contract, intentional misrepresentation, and negligent misrepresentation. In addition to lost wages and hospital expenses, she seeks $1,000,000 in compensatory damages and $1,000,000 in punitive damages.  The Board now moves to dismiss each claim for failure to state a claim upon which relief may be granted.

## II.  DISCUSSION

### A.  <u>Standard of Review</u>

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, the complaint must allege facts that, when accepted as

true, "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. Id. (citing Twombly, 550 U.S. at 555). Thus, the Court "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)) (internal quotation marks omitted).

In determining whether to dismiss, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005); Albright v. Oliver, 510 U.S. 266, 268 (1994).

Under Rule 12(d), however, if "matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule

6

56," and "[a]ll parties must be a given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d). Nonetheless, the Court may consider a document not attached to the complaint "in determining whether to dismiss the complaint [where the document] was integral to and explicitly relied on in the complaint and [where] the plaintiffs do not challenge [the document's] authenticity." Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (citations omitted). Although the Board has presented matters outside of the pleadings, the Court does not rely upon those that are not integral to and explicitly relied on in the Complaint. The Board's Motion, therefore, is not converted into one for summary judgment.

**B.   Analysis**

   **1.   ADEA Claims**

      **a.   Time-Barred Acts**

Many of the acts Ms. Davenport alleges are time-barred. A number of steps must occur before a plaintiff can file or commence an action for age discrimination under the ADEA. See 29 U.S.C. § 626 (2012). Importantly, the discrimination charge must be filed within 180 or, in a deferral state, 300 days of when the alleged conduct occurred. Id. § 626(d)(1)(A)-(B). At most, discrete acts are precluded from this Court's consideration if they occurred more than 300 days prior to the

7

filing of the EEOC claim, even if they are reasonably related to acts that were timely filed.[4]   Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 105, 113 (2002).  Discrete acts include "[e]ach incident of discrimination and each retaliatory adverse employment decision," and must be alleged within the appropriate timeframe because each one represents actionable conduct.  Id. at 113-14.

All conduct alleged from 2008, including Ms. Davenport's interview, the secret interview questions, and Ms. Davenport's complaints to the interviewers and Deputy Superintendent, occurred more than 300 days prior to when Ms. Davenport filed the EEOC claim in October 2010.  They are thus time-barred and precluded from this Court's consideration.

**b.  Age Discrimination**

The Court denies the Board's Motion to Dismiss as to Davenport's age discrimination claim because Ms. Davenport pled a plausible claim for relief.[5]   The ADEA prohibits age discrimination in employment and applies to individuals who are

---

[4] For hostile work environment claims, discrete acts alleged outside the appropriate timeframe are permissible if they are reasonably related to an act that occurs during the statutory period.  Morgan, 536 U.S. at 105.  This Court cannot consider any facts alleged beyond the appropriate timeframe here because Ms. Davenport does not allege a hostile work environment.

[5] Although Ms. Davenport does not allege that the EEOC sent her a letter giving her the right to sue in federal court, there are sufficient facts to show that she, at the very least, filed a claim with the EEOC, thereby exhausting her administrative remedies regarding her discrimination claim.

at least forty years old.   29 U.S.C. §§ 621(b) and 631(a) (2012).   It provides, in relevant part, that it is illegal for any employer to deny employment opportunities to an employee because of her age.   Id. § 623(a)(2).

To demonstrate age discrimination, and thus qualify under § 623(a)(2), the plaintiff must show that: "(1) [s]he is at least 40; (2) [s]he applied for an open position; (3) [s]he was rejected even though qualified; and (4) the position remained open or was filled by a similarly-qualified applicant substantially younger than [her]." Cepada v. Bd. of Educ. of Balt. Cnty., 814 F.Supp.2d 500, 512 (D.Md. 2011) (citing Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006)).   The plaintiff need not show that she is the better qualified candidate, but only that she was qualified for the position.   Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 269 (4th Cir. 2005) (citations omitted).   In addition, a plaintiff alleging employment discrimination does not have to plead "specific facts establishing a prima facie case of discrimination." Reed v. Airtran Airways, 531 F.Supp.2d 660, 666 (D.Md. 2008) (citations and internal quotation marks omitted).   The plaintiff, however, still has the burden "to allege facts sufficient to state all the elements of her claim." Id.

The Board contends that Ms. Davenport failed to state a prima facie case for age discrimination, and that most of the

alleged facts are time-barred because they occurred in 2008, more than 300 days before Ms. Davenport filed her 2010 EEOC claim.  Ms. Davenport argues those factual allegations are reasonably related to the Board's continuing violation of the ADEA, and that she sufficiently established a prima facie case of age discrimination by alleging the Board's repeated denial of her promotion in favor of younger candidates despite her qualifications.

This Court agrees that Ms. Davenport sufficiently pled a claim for age discrimination.  First, Ms. Davenport alleges that she is sixty-two years old and that she applied, either proactively or automatically, for a number of assistant principal positions starting in 2005.  Second, Ms. Davenport met the Board's requirements for assistant principal applicants by becoming Cohort certified and accepting an administrative intern position.  Lastly, Ms. Davenport alleged in her EEOC claim that three individuals in their thirties were selected for assistant principal positions that she should have been considered for in 2010.  Based upon her alleged qualifications and the hiring of three substantially younger candidates in 2010, Ms. Davenport's Complaint, at least for the purpose of the pending Motion to Dismiss, states a plausible claim of failure to promote based upon age discrimination.

As a result, the Court denies the Board's Motion to Dismiss as to Davenport's age discrimination claim.

### c.   Retaliation

The Court denies the Board's Motion to Dismiss as to Ms. Davenport's retaliation claim because she alleges facts that show the alleged increased observation and stringent working conditions imposed upon her may be causally connected to the filing of the EEOC claim.   Further, because these acts occurred after she filed the administrative claim, Ms. Davenport was not required to allege retaliation in the EEOC claim.

The ADEA's anti-retaliation provision prohibits employers from retaliating against employees for exercising their right to raise a discrimination claim.   29 U.S.C. § 623(d) (2012).   To demonstrate retaliation, the plaintiff must show that: (1) she engaged in a protected activity; (2) her employer took a materially adverse employment action against her; and (3) there is a causal connection between the protected activity engaged in by the plaintiff and the subsequent action taken by her employer.   Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997).   An activity is protected when the plaintiff has "an objectively reasonable belief that she was complaining about" discriminatory conduct.   Reed, 531 F.Supp.2d at 671 (citations omitted).   Materially adverse actions are those that cause injury or harm so that it would "dissuade[] a

11

reasonable worker from making or supporting a charge of discrimination" against her employer.  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–68 (2006).  Material adversity depends on the particular circumstances.  See id. at 69 (noting, for example, that while simply excluding an employee from a social gathering at lunch is not retaliation, "excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination" and is therefore retaliation).

The Board argues Ms. Davenport was reassigned before she filed her EEOC claim and, as a result, she was required to allege retaliation in her administrative claim.   Conversely, Ms. Davenport argues the retaliation in question, namely the increased observation and stringent working conditions, occurred only after she filed the EEOC claim.  Ms. Davenport argues she does not have to file a separate EEOC claim alleging retaliation for those actions.

On the one hand, the August 2010 reassignment was a materially adverse employment action that significantly inhibited Ms. Davenport's prospects for professional advancement and would have deterred a reasonable employee from complaining about discrimination.  Ms. Davenport's reassignment, however, is not retaliatory because it occurred before she filed her EEOC

claim in October 2010.  Therefore, the reassignment cannot be causally connected to Ms. Davenport's protected activity.  On the other hand, the increased observation and stringent working conditions, which allegedly occurred after Ms. Davenport filed her EEOC claim, may constitute materially adverse employment actions.  See White, 548 U.S. at 69 (citation omitted) (noting "the significance of any given act of retaliation will often depend upon the particular circumstances" and that "context matters").

Retaliation claims arising after "filing an EEOC complaint [can be] raised for the first time in federal court," as long as the alleged retaliation occurs after the EEOC claim is filed. Plunkett v. Potter, 751 F.Supp.2d 807, 811 (D.Md. 2010) (citing Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992); Jones v. Calvert Group, Ltd., 551 F.3d 297, 303 (4th Cir. 2009)).  Ms. Davenport can permissibly raise retaliation here because the increased observation and stringent working conditions occurred after Ms. Davenport filed the EEOC claim.

As a result, the Court denies the Board's Motion to Dismiss Ms. Davenport's retaliation claim.

### d.    ADEA Claims Limited to $100,000

The Board argues sovereign immunity bars Ms. Davenport's discrimination claims.  The Board is a state agency of Maryland and, therefore, is shielded from most lawsuits, including

discrimination under the ADEA, by the doctrine of sovereign immunity.  Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 248 n.5 (4th Cir. 2012) (citations omitted); Williams v. Wicomico Cnty. Bd. of Educ., 836 F.Supp.2d 387, 395 (D.Md. 2011) (citation omitted).  Section 5-518(c) of the Maryland Code, however, provides that "[a] county board of education may not raise the defense of sovereign immunity to any claim of $100,000 or less."  Md. Code Ann., Cts. & Jud. Proc. § 5-518(c) (West 2012).  Therefore, Ms. Davenport's ADEA claims are capped at $100,000.  See Cepada, 814 F.Supp.2d at 509 (limiting the plaintiff's discrimination claims to $100,000 against a county board of education).

### 2.   ERISA Violations

The Court grants the Board's Motion to Dismiss as to Ms. Davenport's ERISA claim because Ms. Davenport's employment plan through the Board is a governmental plan, which is not covered by ERISA.  ERISA, thus, is not applicable here.

Ms. Davenport contends that ERISA applies to all employee benefits plans that are maintained by an employer who engages in any activity affecting commerce.  The Board argues ERISA does not apply because Ms. Davenport's benefits plan falls under an exception for governmental plans.

The Court agrees with the Board.  ERISA applies to "all employee benefit plans that are established or maintained by an

14

employer engaged in commerce or in any . . . activity affecting commerce, an employee organization, or both." <u>Custer v. Pan Am. Life Ins. Co.</u>, 12 F.3d 410, 417 (4th Cir. 1993) (quoting 29 U.S.C. § 1003(a) (2012)) (internal quotation marks omitted); <u>see</u> <u>Mazer v. Safeway, Inc.</u>, 398 F.Supp.2d 412, 418 (D.Md. 2005) (citation omitted) ("ERISA applies to employee benefit plans, not simply to benefits."). It does not, however, apply to governmental plans, which include "plan[s] established or maintained for its employees . . . by the government of any State or political subdivision thereof, or by any agency or instrumentality of [the State]." 29 U.S.C. §§ 1002(32) and 1003(b) (2012).

Here, ERISA does not apply to Ms. Davenport's employee benefits plan. Although Ms. Davenport maintains an employee benefits plan through the Board, her employee benefits plan is a governmental plan because it was established for employees of the Board, which is an agency or instrumentality of the State of Maryland.

As a result, ERISA is not applicable here and this claim is dismissed.

### 3.  Breach of Contract

The Court grants the Board's Motion to Dismiss as to Ms. Davenport's breach of contract claim because the Board has not waived its right to sovereign immunity under the Eleventh

Amendment of the U.S. Constitution.  "The Eleventh Amendment bars suit in federal court against a state or one of its agencies or departments," unless the state's sovereign immunity is expressly waived by Congress or the state.  Sharafeldin v. Md., Dep't of Pub. Safety & Corr. Servs., 94 F.Supp.2d 680, 686 (D.Md. 2000) (citations omitted).

The Board is a state agency and thus is entitled to sovereign immunity protection in federal court under the Eleventh Amendment.  Lee-Thomas, 666 F.3d at 248 n.5, 255 (citations omitted); Bd. of Educ. of Balt. Cnty. v. Zimmer-Rubert, 973 A.2d 233, 236 (Md. 2009) (citations omitted); Lewis v. Bd. of Educ. of Talbot Cnty., 262 F.Supp.2d 608, 612 (D.Md. 2003).  Although the State expressly waived sovereign immunity in contract actions, the General Assembly limited this waiver to state courts only.  Md. Code Ann., State Gov't § 12-201(a) (West 2012); see also Zimmer-Rubert, 973 A.2d at 240 ("[T]he plain language 'in a court of the State' exclude[s] Eleventh Amendment immunity from § 12-201's general waiver of sovereign immunity.") (emphasis in original).  As a result, the waiver of sovereign immunity under § 12-201(a) does not apply to a state's sovereign immunity under the Eleventh Amendment in federal courts.[6]  See

---

[6] Section 5-518 of the Maryland Code, discussed *supra*, also does not waive the Board's sovereign immunity here.  The Court of Appeals of Maryland, in BEKA Indus., Inc. v. Worcestor Cnty.

Sharafeldin, 94 F.Supp.2d at 687–88 (finding that neither Congress nor the State expressly waived a state agency's Eleventh Amendment sovereign immunity in breach of contract claims).

Thus, Ms. Davenport's breach of contract claim is dismissed on the ground that the Board has sovereign immunity under the Eleventh Amendment in contract actions brought in federal court.

### 4.  Intentional Misrepresentation

The Court grants the Board's Motion to Dismiss as to Ms. Davenport's intentional misrepresentation claim because Ms. Davenport does not plead the time, place, and identity of the entity or person who conveyed either of the two alleged misrepresentations with the required particularity.

To demonstrate intentional misrepresentation under Maryland law, the plaintiff must show that: (1) the defendant made a false representation to the plaintiff; (2) the defendant knew the statement was false or made the statement with reckless indifference for the truth; (3) the purpose of the misrepresentation was to defraud the plaintiff; (4) the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) the plaintiff suffered compensable injury as a result of the misrepresentation.  SpinCycle, Inc. v. Kalendar,

Bd. of Educ., 18 A.3d 890 (Md. 2011), limited § 5-518's application to "tort or insurable claim[s]."  Id. at 907.

186 F.Supp.2d 585, 590 (D.Md. 2002) (quoting _Alleco Inc. v._
_Harry & Jeanette Weinberg Found., Inc._, 665 A.2d 1038, 1047–48
(Md. 1995) (citations omitted)).

Moreover, Rule 9(b) imposes a heightened pleading standard,
requiring allegations of fraud to be pled with particularity.
_See_ Fed.R.Civ.P. 9(b) ("In alleging fraud or mistake, a party
must state with particularity the circumstances constituting
fraud or mistake."). "Circumstances" has been interpreted to
include "the time, place and contents of the false
representation, as well as the identity of the person making the
misrepresentation and what [was] obtained thereby." _Avery v._
_Chariots For Hire_, 748 F.Supp.2d 492, 504 (D.Md. 2010) (citation
and internal quotation marks omitted). In addition, a court
"should hesitate to dismiss a complaint under Rule 9(b) if [it]
is satisfied (1) that the defendant has been made aware of the
particular circumstances for which [it] will have to prepare a
defense at trial and (2) that [the] plaintiff has substantial
prediscovery evidence of those facts." _Id._ (citation and
internal quotation marks omitted).

Finally, fraud generally cannot be predicated on promissory
statements because the failure to fulfill a promise is a breach
of contract, not fraud. _Alleco Inc._, 665 A.2d at 1048
(citations omitted). A promissory representation, however,
"made with an existing intention not to perform is actionable

for fraud." <u>Sims v. Ryland Grp., Inc.</u>, 378 A.2d 1, 2 (Md.Ct.Spec.App. 1977) (citations omitted).

The Board argues Ms. Davenport does not allege the identity of any speakers or specific representations made. Instead, the Board argues, Ms. Davenport only alleges subjective conclusions based on "the relative fairness of competitive interview processes." (Def.'s Mem. Supp. Mot. to Dismiss at 12–13, ECF No. 3-1). Ms. Davenport argues she meets the specificity standard because she alleges information conveyed directly from the Board. According to Ms. Davenport, the Board advised that (1) a Cohort certification or Master's degree were prerequisites for assistant principal positions, and that (2) the selection process for assistant principal candidates was impartial. Ms. Davenport contends that these were false representations of material fact upon which she relied to her detriment.

These facts fall far short of the specificity required under Rule 9(b). Ms. Davenport does not allege a time or place in which she was informed of, or a person who told her about, the Board's policy that Cohort certification or a Master's degree were required for assistant principal candidates. Although Ms. Davenport alleges that she signed the employment contract in 1972, she does not allege that the Board's policy was communicated to her or agreed upon in that contract.

19

In addition, Ms. Davenport specifically notes that impartiality is an "implicit" component of her contract, never alleging that any individual ever represented to her that the interviews would be conducted through "a fair and impartial interview process, and . . . [that] she would be in as good or better a position as similarly situated candidates." (Compl. ¶¶ 65, 79). Ms. Davenport additionally never alleges that any individual ever represented to her that she "would be in as good or better a position" than any other candidate simply by interviewing and being evaluated. The fact that Ms. Davenport also does not alternatively allege that the Board never intended to fulfill its promise to follow its own procedure, which could be actionable for fraud, is equally fatal to Ms. Davenport's claim.

As a consequence, Ms. Davenport did not plead with the particularity required to establish a plausible claim for intentional misrepresentation, and her claim is dismissed.

### 5.   Negligent Misrepresentation

The Court grants the Board's Motion to Dismiss as to Ms. Davenport's negligent misrepresentation claim because Ms. Davenport fails to identify who asserted the allegedly false statement and, in one instance, admits that the allegedly false statement was implied but not asserted.

To demonstrate negligent misrepresentation under Maryland law, the plaintiff must show that: (1) the defendant, owing a duty of care to the plaintiff, negligently asserted a false statement; (2) the defendant intended the plaintiff to act upon his statement; (3) the defendant had knowledge that the plaintiff would probably rely on his statement, which would cause loss or injury if erroneous; (4) the plaintiff relied on the statement and justifiably took action; and (5) the plaintiff suffered harm proximately caused by the defendant's negligence. Martens Chevrolet, Inc. v. Seney, 439 A.2d 534, 539 (Md. 1982). Because negligent misrepresentation does not include fraud, it is not subject to the Rule 9(b) heightened pleading standard.

The Board argues that, similar to her intentional misrepresentation claim, Ms. Davenport merely advances conclusory allegations and fails to plead the required elements with any specificity.  Ms. Davenport argues that negligent misrepresentation does not include the element of fraud and thus is not subject to a heightened pleading standard.

Although Ms. Davenport is correct, her negligent misrepresentation claim largely suffers from the same pitfalls as her claim for intentional misrepresentation.  Namely, Ms. Davenport failed to indicate from whom she learned of the Board's alleged policy to require Cohort certification or a Master's degree as a prerequisite for assistant principal

positions, and she alleges that fairness and impartiality in the hiring process was only implied but not asserted.  Although Ms. Davenport relied on these representations, it is impossible to determine whether the individual or entity owed a duty to Ms. Davenport and negligently communicated a false statement to Ms. Davenport when she does not identify the source or leads the Court to infer that the representation was, in fact, never communicated to her at all.

Therefore, Ms. Davenport also fails to state a plausible claim for negligent misrepresentation, and her claim is dismissed.

### III. CONCLUSION

For the foregoing reasons, it is hereby ordered that the Board's Motion to Dismiss (ECF No. 3) is GRANTED in part and DENIED in part.  Counts III, IV, V, and VI are dismissed. Counts I and II will proceed to discovery.  A separate Order follows.

Entered this 4th day of December, 2012

/s/

_____
George L. Russell, III
United States District Judge