IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTINE DAVENPORT,         :

    Plaintiff,          :

v.                   :

                          Civil Action No. GLR-12-1335

ANNE ARUNDEL COUNTY BOARD OF  :
EDUCATION,

                        :

    Defendant.

                        :

**MEMORANDUM OPINION**

This employment discrimination action is before the Court

on Defendant Anne Arundel County Board of Education's[1] (the

"Board") Motion for Summary Judgment (ECF No. 29). Plaintiff

Christine Davenport, a former employee of the Board, alleges the

Board repeatedly failed to promote her in favor of substantially

younger and less-qualified applicants in violation of the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et

seq. (2012). She also alleges the Board retaliated against her

in response to her internal and formal complaints. The Court,

having reviewed the pleadings and supporting documents, finds no

hearing necessary. See Local Rule 105.6 (D.Md. 2011). For the

reasons outlined below, the Board's Motion will be granted.

---

[1] The Board notes that its proper name is Board of Education
of Anne Arundel County.

## A.   Facts Relevant to Age Discrimination

The Court previously recited the applicable facts in the preceding Memorandum Opinion dated December 4, 2012 (ECF No. 12), but will reiterate the facts necessary to rule on the present motion.  Davenport was born in December 1949.  She began working for Anne Arundel County Public Schools ("AACPS") as a teacher in 1973, where she remained for the ensuing thirty-two years.  In 2005, at age fifty-five, Davenport decided to become an assistant principal.  She applied for, and was hired as, an administrative trainee in September 2005.  At the time, the administrative trainee position provided administrative support with student discipline and served as a springboard for individuals interested in being promoted to other administrative positions, including assistant principal.

The Board requires assistant principal candidates to have an Administrator I endorsement and to interview with a panel of principals that rates the candidates on a scale of zero to three.  Candidates are then placed on a list and may apply to open positions or be considered for unadvertised assistant principal positions.

_____

[2] Unless otherwise noted, the following facts are undisputed and are viewed in the light most favorable to Davenport, the nonmoving party.

In 2008, while serving as an administrative trainee, Davenport received her endorsement and interviewed for secondary assistant principal positions. She received an interview score of 1.76, equivalent to "recommend with reservations." (Def.'s Mem. Supp. Mot. Summ. J. Ex. 1, Attach. D, ECF No. 29-2). Though the parties dispute the specific reasons why, Davenport was not considered for promotion to an assistant principal position despite applying for, and inquiring about, several open positions. Instead, the Board repeatedly filled the positions with younger candidates. Before the 2010-2011 school year, as Davenport's time as an administrative trainee came to an end, the Board hired or promoted "several individuals" under the age of forty to assistant principal positions, none of whom had interview scores lower than 2.0. (Def.'s Mem. Supp. Mot. Summ. J. Ex. 1, at 3, ECF No. 29-2); (see also Pl.'s Opp'n to Def.'s Mot. Summ. J. & Req. for Hr'g ["Pl.'s Opp'n"] Ex. 5, at 2, ECF No. 34-5) (naming three individuals under the age of forty whom the Board allegedly hired as assistant principals).

The lone exception was Phillip Elliot. The Board promoted Elliot to assistant principal at Meade High School effective August 19, 2010, because the position became available later in the summer hiring season. He was forty years old and had an interview score lower than 2.0 and equivalent to "recommend with

reservations." (Liverman Dep. 64:2-3, July 31, 2013, ECF No. 34-2). The timing permitted Meade High School Principal Darryl Kennedy to recommend an individual for assistant principal at the school. After having supervised Davenport and Elliot while both were administrative trainees at Meade High School during the 2009-2010 school year, Principal Kennedy recommended Elliot for the assistant principal position.

No one recommended Davenport or advocated on her behalf. Rather, Principal Kennedy testified that Davenport's "response to situations [involving student behavior] were either slow or nonexistent," and though "she was a very positive person . . . , there was some slowness to her." (Kennedy Dep. 34:15-16, 39:19-21, Sept. 12, 2013, ECF No. 34-4). Davenport spoke to Principal Kennedy directly about the decision to promote Elliot, believing the decision was discriminatory based on her age.

Davenport also met with AACPS Deputy Superintendent ("Dep. Sup.") Arlen Liverman to voice her concern about being overlooked for assistant principal positions. During the meeting, Dep. Sup. Liverman remarked that Davenport would not be promoted because of her "experience" or "seniority,"[3] and that her "salary would be too high." (Pl.'s Opp'n Ex. 1, ¶ 6, ECF

---

[3] Davenport is unable to remember whether Dep. Sup. Liverman used the word "experience" or "seniority" but knows he used one of the two. (Davenport Dep. 58:3-60:8, Aug. 2, 2013, ECF No. 37-2); (Pl.'s Opp'n at 4 n.1).

No. 34-1). By the start of the 2010-2011 school year, at sixty years old, Davenport was transferred to Marley Middle School as an eighth grade science teacher.

**B.**  **Facts Relevant to Retaliation**

Davenport filed a discrimination charge with the Maryland Commission on Human Relations ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") on October 8, 2010, alleging age discrimination. In the discrimination charge, Davenport alleged the Board promoted three individuals under the age of forty, including Elliot, to unadvertised assistant principal positions even though they were less qualified. Three of her counterparts older than fifty, she alleged, were selected for teaching positions rather than as assistant principals.

One month later, on November 8, 2010, Marley Middle School Assistant Principal ("Asst. Principal") Susan Sergeant observed Davenport's classroom at Principal Kevin Buckley's request. Principal Buckley had observed Davenport's classroom two months earlier. Asst. Principal Sergeant's evaluation contained a critical analysis of Davenport's classroom performance with recommendations for improvement. By November 17, 2010, Davenport's performance started to decline. That day, Principal Buckley attempted to counsel Davenport and present her with the Board's written procedures for penalizing and terminating

tenured teachers. Davenport, taking the gesture as an "unmistakable" sign her termination was imminent, began taking sick leave the following day and did not return to Marley Middle school, having since retired. (Pl.'s Opp'n at 5, ECF No. 34).

## C. <u>Procedural History</u>

Davenport commenced this action in this Court on May 1, 2012, alleging violations of the ADEA and the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1140 (2012), and advancing claims for breach of contract, intentional misrepresentation, and negligent misrepresentation. On December 4, 2012, the Court dismissed all but Davenport's age discrimination and retaliation claims, limiting their scope to facts not time-barred by the ADEA. (<u>See</u> ECF Nos. 12, 13). It also limited Davenport's retaliation claim to acts that occurred after she filed her discrimination charge. Discovery has since concluded and the Board now moves for summary judgment.

## II. DISCUSSION

## A. <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56(a), the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247–48 (emphasis in original).

A material fact is one that might affect the outcome of a party's case. Id. at 248; JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001). The materiality is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001).

A genuine issue concerning a material fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. Rule 56(e) requires the nonmoving party to go beyond the

pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

**B.   Analysis**

   **1.   Age Discrimination Claim**

The ADEA prohibits employers from discriminating against individuals because of their age.   29 U.S.C. § 623(a)(1). Davenport can establish age discrimination under the ADEA either through: (1) direct or circumstantial evidence her age motivated the Board's adverse employment decision, or (2) the analytical approach espoused in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), in which the Court engages in a burden-shifting analysis.   Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir. 2004).

      **a.   Direct Evidence of Discrimination**

At the outset, Davenport contends she has direct evidence of age discrimination in which Board employees referenced her "experience" or "seniority" in addressing why she would not be promoted, or described her as having "some slowness to her." Davenport avers that these are code words betraying a discriminatory animus.   The Board denies these claims, arguing Davenport's recollection of the events is inconsistent and that

8

her "slowness" was in reference to her disciplinary ability, not her age.  The Court agrees with the Board because neither statement betrays a discriminatory intent when viewed in context.

Direct evidence of age discrimination "may include employer remarks that reflect a discriminatory attitude, or that demonstrate a discriminatory animus in the decisional process." Martin v. Alumax of S.C., Inc., 380 F.Supp.2d 723, 728 (D.S.C. 2005) (quoting Kneibert v. Thomson Newspapers, Mich. Inc., 129 F.3d 444, 452 (8th Cir. 1997)) (internal quotation marks omitted).  To meet her evidentiary burden, Davenport "must present evidence which demonstrates a specific link between the discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the challenged decision."  Id. (quoting Braziel v. Loram Maint. of Way, Inc., 943 F.Supp. 1083, 1095 (D.Minn. 1996)) (internal quotation marks omitted).

Not all age-related statements, however, are categorized as direct evidence of age discrimination.  Id.  Indeed, the standard can be quite high.  The United States Court of Appeals for the Fourth Circuit, in particular, has "noted that most age discrimination cases fall into the category of pretext cases,

because direct evidence of improper discrimination is unusual." Malina v. Balt. Gas & Elec. Co., 18 F.Supp.2d 596, 604 n.5 (D.Md. 1998) (citing Halperin v. Abacus Tech. Corp., 128 F.3d 191, 202 n.16 (4th Cir. 1997)). "Rather, courts have found only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, to constitute direct evidence of discrimination." Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989). This tentativeness by courts "militates against a finding of direct evidence of age discrimination." Martin, 380 F.Supp.2d at 729.

With this in mind, Davenport's testimony raises concerns about whether Dep. Sup. Liverman's alleged statements are in fact direct evidence of discrimination. In her affidavit, Davenport testified that Dep. Sup. Liverman told her, "I would not be promoted because of my 'experience' or 'seniority,' and said that my salary would be too high." (Pl.'s Opp'n Ex. 1, ¶ 6) (emphasis added). In one of her interrogatory answers, Davenport responded that Dep. Sup. Liverman told her "he could not promote her because she'd be on the top of the scale . . . [and] they would have to pay her more." (Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. Summ. J. ["Def.'s Reply"] Ex. 1, at 3, ECF No. 37-1) (emphasis added).

Instead of her age, Dep. Sup. Liverman seemed most concerned with her salary. (See Davenport Dep. at 58:10-20) (saying that "the Board does not have that kind of money to pay you"); (id. at 59:16-19) (noting that she "would be making more money than some of the principals"). That Davenport later doubted whether Dep. Sup. Liverman discussed her age at all only buttresses the notion that any alleged insinuations about her experience or seniority were to implicate her salary, not to stress her age.[4] (Davenport Dep. at 60:9-17).

There are certainly occasions when employers use experience and seniority to conceal a discriminatory animus. See, e.g., Taggart v. Time, Inc., 924 F.2d 43, 47 (2d Cir. 1991) (noting that denying an older applicant employment based on experience "is simply to employ a euphemism to mask the real reason for refusal, namely, in the eyes of the employer the applicant is too old"); Arnold v. U.S. Postal Serv., 863 F.2d 994, 1000 (D.C. Cir. 1988) ("There may well be cases in which seniority is simply a code word for age discrimination.").

But when legitimately considered on its own accord, one's experience or seniority is typically not a basis for age

---

[4] The Board argues Dep. Sup. Liverman specifically told Davenport during their meeting that longevity is not a basis for promotion and that none of her five previous supervisors advocated on her behalf. (Def.'s Reply at 2). This argument is unsupported because the evidence the Board cites is not included in the record.

discrimination under the ADEA, especially when coupled with salary considerations, as Davenport suggests is the case throughout her testimony. See Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993) ("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'"); Armendariz v. Pinkerton Tobacco Co., 58 F.3d 144, 152 (5th Cir. 1995) ("[T]he ADEA prohibits discrimination on the basis of age, not salary or seniority."). Accordingly, Dep. Sup. Liverman's alleged comments are not direct evidence of age discrimination.[5]

A review of Principal Kennedy's statements yields similar results. Davenport relies on two portions of Principal

---

[5] Davenport, citing 29 C.F.R. § 1625.7, argues salary concerns are not a defense to disparate treatment claims. The regulation, however, is inapplicable here because the Board does not use age as a limiting criterion for promotions. 29 C.F.R. § 1625.7(b) (2014); see EEOC v. Johnson & Higgins, Inc., 887 F.Supp. 682, 685–86 (S.D.N.Y. 1995) (applying 29 C.F.R. § 1625.7 where a company expressly required its employees to retire by a certain age). Moreover, salary concerns are indeed a viable consideration in disparate treatment claims. See, e.g., Blackburn v. Wise Cnty. Sch. Bd., No. 2:11CV00033, 2012 WL 1309406, at *3 (W.D.Va. Apr. 17, 2012) (concluding the desire to reduce salary does not support a disparate treatment claim under the ADEA).

Davenport also argues Dep. Sup. Liverman denied her salary was a consideration. Though references to Davenport's salary appear nowhere outside her own testimony, the Court can find nothing in the record supporting her argument.

Kennedy's deposition testimony in which he refers to her as "slow" and having "some slowness to her." (Kennedy Dep. 34:16, 39:21). Read in a vacuum, the statements could reasonably carry indicia of discriminatory intent. Examining the statements in context, however, reveals that Principal Kennedy was describing Davenport's inadequate responses to student misconduct given her extensive training and experience:

> Q.  Can you think of any specific examples when you had to train or teach her things that you would have expected her to already know?
>
> A.  . . . [W]hether it's kids horseplaying too much or loud profanity, . . . there were instances where her response to situations were either slow or nonexistent, and there were concerns about how she handled or dealt with it.

(Id. at 34:5-17) (emphasis added); (see also id. at 39:14-40:15) (noting that he expected a third- or fourth-year administrative trainee "to handle situations a little bit more quicker than she did").

None of the statements Davenport relies upon reveal a discriminatory animus and thus are not direct evidence of age discrimination.

### b.    Pretextual Approach Under McDonnell Douglas

Because Davenport provides no direct evidence of age discrimination, she must rely on the McDonnell Douglas framework.    McDonnell Douglas prescribes a burden-shifting

13

analysis in which Davenport must first demonstrate a prima facie case of age discrimination.  Hill, 354 F.3d at 285.  Once she establishes a prima facie case, the burden shifts to the Board to provide a legitimate, non-discriminatory reason for failing to promote her.  Id.  If the Board can do so, the burden shifts back to Davenport, who must demonstrate by preponderance of the evidence that the reason offered is in fact a pretext for discrimination.  Id.  To do so, Davenport must do more than simply show the articulated reason is false.  Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006).  She must show that the Board discriminated against her on the basis of her age.  Id.

Given this framework, the Court concludes that Davenport fails to establish a prima facie case for age discrimination because she was not qualified for assistant principal positions. Even if she established a prima facie case, however, the Board provides legitimate, non-discriminatory reasons for failing to promote her that Davenport cannot show are pretextual by preponderance of the evidence.

### i.  Prima Facie Case for Age Discrimination

The Board concedes that Davenport is a member of the protected class and applied for open assistant principal positions, but it disputes whether she was qualified.  It argues Davenport was not considered for assistant principal positions

14

because she had an interview score lower than 2.0.[6] Davenport contends there is no minimum qualifying score and that she has otherwise met all the factors for establishing a prima facie case. The Court disagrees, concluding that Davenport has not established a prima facie case for age discrimination because she has not shown that she was qualified for an assistant principal position.

To establish a prima facie case of failure to promote on the basis of age discrimination, Davenport must show: (1) she is a member of the protected class of individuals at least forty years old, (2) the Board had an open position for which she applied and was qualified, (3) she was rejected despite her qualifications, and (4) the position remained open or was filled by a substantially younger, similarly qualified applicant, regardless of whether the applicant is also a member of the protected class. Laber v. Harvey, 438 F.3d at 430. Considering the Board's concessions, and that neither party disputes whether assistant principal positions were filled with similarly qualified but substantially younger applicants, the only issue

---

[6] The Board also argues there are no circumstances giving rise to an inference of unlawful discrimination. This argument is misplaced, however, because circumstances giving rise to an inference of unlawful discrimination is a factor in alleged instances of race discrimination, not age discrimination. See Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005) (outlining the factors to establish a prima facie case of racial discrimination in promotions).

remaining is whether Davenport was qualified. The Court concludes she was not.

Neither party presents an express list of qualifications for assistant principal positions. Frankly, the record is unclear as to whether one exists, or whether applicants are fully aware of such qualifications before applying. The ambiguity creates the issue of whether one's low interview score and lack of administrative advocacy disqualifies her from further consideration. Given the record before it, the Court believes they do.

The testimony exposes a distinction between applicants in the pool for open assistant principal positions and those qualified for additional consideration. Several facts give credence to this distinction. Namely, Davenport was placed in the applicant pool by virtue of having completed the panel interview with a score within the minimum accepted range. (See Pl.'s Opp'n Ex. 9, ECF No. 34-9) (informing Davenport that she was in the applicant pool after having interviewed); (Bass Dep. 28:4-12, Aug. 1, 2013, ECF No. 34-10) (noting that a "recommended with reservations" score or better placed applicants in the pool). But in reality, Davenport's chances of being promoted with her interview score were nearly non-existent. (Liverman Dep. 36:16-19); (see also Def.'s Mem. Supp.

Mot. Summ. J. Ex. 1, Attach. D) (encouraging applicants with lower interview scores to pursue other opportunities for professional growth). During her time in the pool, for example, only Elliot became an assistant principal without a favorable interview score, and only after an administrator advocated on his behalf.[7]

To boot, the Board predetermined that only assistant principal applicants with interview scores at 2.0 and above would qualify for further consideration, (Bozzella Dep. 114:4-7, Sept. 3, 2013, ECF No. 34-3), requiring administrators intending to select candidates with lower scores to justify their selections to Dep. Sup. Liverman. (Def.'s Mem. Supp. Mot. Summ. J. Ex. 1, at 3). Effectively, to qualify for the position, assistant principal applicants needed to score at or above 2.0, or have an administrator advocate on their behalf. Davenport lacked both of those critical elements and was thus unqualified.

## ii. Pretextual Analysis

The Court is sympathetic to the fact that Davenport's case presents a series of unfortunate events in which one could reasonably believe she was being discriminated against. But

---

[7] After Davenport retired, one other candidate with a score lower than 2.0, Christian Thomas, was promoted to assistant principal. (Bozzella Dep. 115:5-19). Thomas, like Elliot, served satisfactorily as an administrative trainee and had a supervising principal advocate on his behalf. (Id.).

even when giving her the full benefit of the doubt, and assuming she establishes a prima facie case for age discrimination, Davenport would not be able to meet her burden of demonstrating that the Board's legitimate, non-discriminatory reasons for failing to promote her are pretexts for discrimination. Davenport can meet her pretextual burden "either by showing that [the Board's] explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of age discrimination." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)) (internal quotation marks omitted).

The Board offers two reasons for not hiring Davenport: (1) it only considers candidates with an interview score at 2.0 or higher, and (2) it deviated from that policy only once and under certain, narrow circumstances. The policy existed at the time Davenport initially interviewed, and she received information about the policy along with her interview score. (See Def.'s Mem. Supp. Mot. Summ. J. Ex. 1, Attach. D).

The Board had also applied the policy consistently, irrespective of age, throughout Davenport's candidacy with the exception of Elliot. It promoted Elliot to an assistant principal position despite having a lower score because Principal Kennedy advocated on his behalf. Principal Kennedy

18

had directly observed Elliot and Davenport for a year; he noted Elliot's strong performance as an administrative trainee and his ability to fill the school's particular needs. (Kennedy Dep. 94:12-19, 97:13-98:4). He did not believe Davenport possessed the same qualities. (Id. at 99:3-20). He made the decision based on their job performance and relative qualifications, which are "valid, non-discriminatory bases for any adverse employment decision." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996). The Board's reasons thus are legitimate and non-discriminatory.

Davenport argues, however, the Board's proffered reasons are pretexts for discrimination more generally because its reasons have changed substantially over time. Relying solely on her own affidavit and deposition testimony, Davenport argues the Board initially told her she would not be promoted because of her experience or seniority, starkly different from the qualifying score defense it now employs. Davenport's exclusive reliance on her own testimony is troubling because she admits being uncertain about, or unable to recall, critical pieces of what Dep. Sup. Liverman said. Conversely, the Board offers the email accompanying Davenport's interview score and testimony from several witnesses supporting that Davenport's low interview score significantly hindered her chances for promotion. Given

the evidence upon which the parties rely, Davenport would fail to establish this point by preponderance of the evidence.

As for the Board's specifically proffered reasons, Davenport again argues there is no minimum interview score and that Elliot's promotion logically invalidates any minimum interview score argument.[8] The Court addressed these arguments in discussing whether Davenport was qualified. As the Court previously concluded, qualified assistant principal applicants either need an interview score at or above 2.0, or an administrator with personal knowledge of their abilities to advocate on their behalf. Davenport and Elliot's circumstances, though different, fit that mold.

Moreover, Elliot was the better qualified candidate. Elliot had Administrator I and II endorsements, and had prior administrative experience in the Prince George's County school system. (Def.'s Mem. Supp. Mot. Summ. J. Ex. 1, at 3). He also performed well at Meade High School, prompting Principal Kennedy to advocate on his behalf. (Id.). Davenport had only an Administrator I endorsement and no prior administrative experience other than as an administrative trainee.

---

[8] Davenport also argues Principal Kennedy displayed a discriminatory intent by calling her "slow." The Court previously addressed this concern and concluded that, when read in context, Principal Kennedy's comments about Davenport's slowness betrayed no discriminatory animus.

Her tenure at Meade High School was rife with issues as well. She did not progress through the administrative trainee program as expected, and there were concerns with how she handled student disciplinary matters. (Kennedy Dep. 33:2–34:19). Other teachers expressed concern with her ability to communicate effectively, and Principal Kennedy continually spoke to her about building her skills as an administrative leader "in lieu of just sort of being there without saying anything" when marshaling students through the hallways. (Id. at 35:14–36:19). Principal Kennedy compared the two candidates and found Elliot better qualified to meet the demands of the assistant principal position. The evidence before the Court does not support that the Board's reasons for failing to promote Davenport are pretexts for discrimination.

For those reasons, summary judgment is warranted as to Davenport's age discrimination claim.

### 2.   Retaliation Claim

In addition to her age discrimination claim, Davenport contends the Board retaliated against her in response to her repeated complaints. The Court concludes that Davenport fails to establish a prima facie case of retaliation.

The McDonnell Douglas burden-shifting framework also applies to retaliation claims. Laber, 438 F.3d at 432. To

establish a prima facie retaliation claim, Davenport must show: (1) she engaged in a protected activity, (2) the Board took an adverse employment action against her, and (3) there is a causal link between the protected activity and adverse action. Id. If Davenport establishes a prima facie case, the Board must produce a legitimate, non-discriminatory reason for the alleged adverse actions. Id. If so, Davenport must show the Board's offered reason is false and that it retaliated against her. Id.

The parties agree that Davenport engaged in a protected activity when she filed her discrimination charge with the MCHR and EEOC.[9] They diverge, however, in whether she was subjected to adverse employment actions causally connected to her filing the discrimination charge.

Adverse employment actions "adversely affect the terms, conditions, or benefits" of employment and create such harm to "dissuade[] a reasonable worker from making or supporting a

_____

[9] Davenport contends she engaged in protected activities before filing her discrimination charge – namely, she complained informally to three administrative officials about the Board's failure to promote her. While informal complaints about discriminatory treatment are protected activities, Kubicko v. Ogden Logistics Servs., 181 F.3d 544, 551 (4th Cir. 1999), the Court need not address Davenport's contention because she failed to allege retaliation in her discrimination charge and has not exhausted her administrative remedies for acts occurring beforehand. (See Pl.'s Opp'n Ex. 5). Similarly, though Davenport alleges the Board did not formally train her on the new classroom technology, that practice existed before she filed her discrimination charge and does not appear to have increased or changed substantially as a result of the filing.

charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 60 (1996) (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)) (internal quotation marks omitted); Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004)) (internal quotation marks and alterations omitted). Whether any given act amounts to retaliation depends upon the particular circumstances. White, 548 U.S. at 69. For example, changes "in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school children." Id. In the same vein, an unfavorable evaluation could be retaliatory if it affects a term, condition, or benefit of employment. Von Gunten v. Maryland, 243 F.3d 858, 867 (4th Cir. 2001), abrogated on other grounds by White, 548 U.S. 53.

Davenport alleges two adverse actions that occurred after she filed her discrimination charge: (1) Asst. Principal Sergeant observed Davenport in the classroom and provided an evaluation "highly critical" of her performance, and (2) Principal Buckley attempted to counsel Davenport and present her with the procedures for penalizing and terminating tenured teachers. Only Principal Buckley's attempts constitute an adverse employment action.

Asst. Principal Sergeant's evaluation was not as "highly critical" as Davenport claims. She noted several positive aspects of Davenport's class, specifically that Davenport provided engaging opportunities for students to learn and enhanced her classroom performance by incorporating Principal Buckley's previous recommendations. (See Def.'s Mem. Supp. Mot. Summ. J. Ex. 3, Attach. A, ECF No. 29-4). Other than suggesting improvements, such as using a timer to help pace lessons and delivering the lesson plan in a more logical manner, Asst. Principal Sergeant was expressly critical in only one regard. She noted that incomplete sentences and a confusing order made it difficult to understand Davenport's lesson plan. (Id. at 3). While criticism is often hard to swallow, no reasonable employee would view Asst. Principal Sergeant's evaluation as deterring that employee from alleging discrimination.

To that end, a reasonable employee would view the attempted counseling and presentation of termination procedures as affecting the terms, conditions, or benefits of employment. The counseling and procedures were the first among many steps in a "plan of action" that could potentially lead to an employee's termination. (Davenport Dep. 114:3-14). Considering Davenport had been counseled twice before for missing departmental meetings, she recognized the termination procedures and

additional counseling as an affirmative step toward losing her job.  A reasonable employee would do the same.  As a result, the Board subjected Davenport to an adverse employment action when Principal Buckley attempted to counsel her and present her with the termination procedures.

Nevertheless, neither action was causally connected to Davenport's discrimination charge filing.  To establish a causal connection, plaintiffs must show that the employer took action because they engaged in a protected activity.  Holland, 487 F.3d at 218 (citing Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998)).  It is not enough that the adverse actions merely followed the protected activity unless the two events were close in time.  Rupert v. Geren, 605 F.Supp.2d 705, 715 (D.Md. 2009).  Equally crippling is if the employer was unaware of the protected activity.  See Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 411 (4th Cir. 2013).

Asst. Principal Sergeant's observation was one of the two to four evaluations routinely scheduled for every teacher each year.  (Def.'s Mem. Supp. Mot. Summ. J. Ex. 3, at 1, ECF No. 29-4).  Principal Buckley attempted to counsel Davenport and provide her the termination procedures only after she began to miss departmental meetings regularly and garnered unsatisfactory

evaluations. (Def.'s Mem. Supp. Mot. Summ. J. Ex. 2, at 2, ECF No. 29-3). She had already been counseled twice before the fateful counseling attempt at issue here. (Id.). Lastly, neither administrator knew at the time that Davenport had filed her discrimination charge. (Id. at 3); (Def.'s Mem. Supp. Mot. Summ. J. Ex. 3, at 2). Davenport has not shown either alleged adverse employment action was causally connected to her discrimination charge filing and thus fails to establish a prima facie case for retaliation.

There being no genuine issue of material fact, the Court will also enter summary judgment as to Davenport's retaliation claim.

### III. CONCLUSION

For the foregoing reasons, the Board's Motion for Summary Judgment (ECF No. 29) will be granted. A separate Order follows.

Entered this 6th day of February, 2014

/s/
_____
George L. Russell, III
United States District Judge